WOODALL, Justice.
The Tuscaloosa County Special Tax Board (“the Board”) petitions this Court for a writ of mandamus directing the Fay-ette Circuit Court to vacate an order denying its motion to dismiss all claims asserted against it by The Pittsburg & Midway Coal Mining Company (“the Company”) and to grant its motion. We deny the petition.
This action began on April 26, 2006, when the Company filed a pleading in the Fayette Circuit Court against, among others, the Fayette County Commission (“the Commission”) and the Board. The pleading was styled: “Notice of Appeal and Complaint for Declaratory Judgment and *611 Recovery of Taxes Paid and for Injunction Against Assessment of Tax” (hereinafter referred to as “the complaint”). The complaint sought a refund of use taxes paid by the Company to Fayette County on the Company’s coal-mining operations at the North River Mine, which straddles the border of Fayette County and Tuscaloosa County.
The facts as alleged in the complaint tend to show the following. On July 11, 2005, the Board issued a “preliminary assessment” of use taxes due for the period June 1, 1999, through April 30, 2005 (“the audit period”). The assessment included $493,556.16 in taxes the Board alleged had been erroneously paid to Fayette County during the audit period, plus interest and penalties. On August 10, 2005, the Company filed with the Board a “Petition for Review of the Preliminary Assessment.” On August 18, 2005, the Company sent the Commission a “Petition for Refund,” requesting a refund of “the amount of use tax that the Preliminary Assessment alleged] was erroneously paid to Fayette County and which should have been paid to Tuscaloosa County” (“the refund petition”). As authority for the refund, the refund petition cited Ala.Code 1975, §§ 40-2A-7 and 40-23-2.1. On March 28, 2006, the Board issued a “Final Assessment of Tuscaloosa County Use Tax,” totaling $749,197.11 (“the final assessment”). On April 10, 2006, the Commission sent the Company a letter denying the refund.
The Company’s complaint followed that denial. As alleged in the complaint, “Fay-ette County’s position directly conflicts with that of [the Board], which alleges that use tax was erroneously paid to Defendant Fayette County and should instead have been paid to [the Board].” (Emphasis added.) The Company sought a judgment directing Fayette County to refund to it the $493,556.16 allegedly owing to the Board. It also sought an injunction against the assessment, or attempted collection, of such use taxes by the Board.
On May 31, 2006, the Board moved to dismiss the claims against it on the ground that the trial court lacked subject-matter jurisdiction over it. The trial court denied that motion. The Board then filed this mandamus petition, asserting, again, that the trial court lacks subject-matter jurisdiction over the claims against it.
In its petition, the Board relies solely on Local Act No. 56, Ala. Acts 1953, § 10, as amended by Act No. 94-554, Ala. Acts 1994 (“the Local Act”). That section provides, in pertinent part:
“Section 10. Appeals from Assessments. Whenever any taxpayer who has duly appeared and protested a final assessment made by the tax board is dissatisfied with the assessment finally made, he may appeal from said final assessment to the Circuit Court of the county, sitting in equity, by filing notices of appeals with the secretary of the tax board and with the register of said court within thirty (30) days from the date of said final assessment....”
(Emphasis added.) The Local Act, in § 1, defines “county” as “Tuscaloosa County in the state.”
According to the Board, “[t]he crux of [the Company’s] claim against the Board is its dissatisfaction with the ... Final Assessment ] issued against it .... [and] [t]he Local Act sets forth the exclusive remedy available to [the Company] for its dissatisfaction with the assessments — an appeal to the Circuit Court for ‘Tuscaloosa’ County.” Petition, at 7 (emphasis added).
“The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003). However, “[f]or the writ of *612 mandamus to issue ‘ “[t]he right sought to be enforced by mandamus must be clear and certain with no reasonable basis for controversy about the right to relief.” ’ ” Ex parte Vance, 900 So.2d 394, 398-99 (Ala.2004).
The Company contends that this action is not an appeal from the final assessment but an appeal from Fayette County’s denial of the refund petition. The Company relies on procedures set forth in statutes of statewide application, specifically, § 40-23-2.1, to which the parties refer as the “anti-whipsaw” statute, and § 40-2A-7, which is a portion of the Alabama Taxpayers’ Bill of Rights and Uniform Revenue Procedures Act, Ala.Code 1975, §§ 40-2A-1 to -18 (“the TBOR”).
Section 40-23-2.1(b) provides, in pertinent part: “If a ... use tax ... levied by or on behalf of an Alabama county is paid under a requirement of law, the property which is the subject of such tax, when imported for use, storage, or consumption into another Alabama county, is not subject to the use ... tax ... required by the second county .... ” Subsection (c) provides, in pertinent part:
“This section applies to ... all counties in Alabama levying or administering a ... use tax.... It is the intent of this section that ... only one county ... use ... tax ... be collected or paid on the same sale or rental transaction. To that end, if a ... use tax ... owed to one ... county, hereinafter referred to as the ‘proper locality,’ is erroneously paid to a different ... county in good faith, based on a reasonable interpretation of the enabling ordinance, resolution, or act levying or authorizing the tax, but not under a requirement of law, the ... county receiving the erroneous payment shall refund the overpaid tax, without interest, to the taxpayer within 60 days of the taxpayer’s compliance with the applicable refund procedures. In order to avoid the accrual of interest and any otherwise applicable penalties on the tax due the proper locality, the taxpayer making the erroneous payment must comply with the applicable refund procedures within 60 days of receiving notice from a county ... or its agent of the erroneous payment. If the taxpayer complies with the refund procedure in a timely manner, the proper locality shall not assess or attempt to assess the tax, or any related interest or otherwise applicable penalty thereon, and no interest or penalty thereon shall accrue, until the date of receipt of the overpayment by the taxpayer or the taxpayer’s agent.”
(Emphasis added.) Although the “anti-whipsaw” statute clearly ensures against double tax liability, it is not self-executing. In other words, it does not provide a procedure for resolving a dispute occasioned by the “receiving” county’s decision, as in this case, to challenge the right of the purported “proper locality” to the alleged “erroneous” payment.
In that connection, § 40-2A-7(c)(l) provides, in part: “Any taxpayer may file a petition for refund with the department for any overpayment of tax or other amount erroneously paid to the department or concerning any refund which the department is required to administer.”[1] Section 40- *613 2A-7(c)(5)b., on which the Company relies, provides, in pertinent part:
“[T]he taxpayer may appeal from the denial of a petition for refund by filing a notice of appeal with the Circuit Court in Montgomery County, Alabama, or the circuit court of the county in which the taxpayer resides or has a principal place of business in Alabama, as appropriate, by filing the notice of appeal within two years from the date the petition is denied. The circuit court shall hear the appeal according to its own rules and procedures and shall determine the correct amount of refund due, if any.”
(Emphasis added.)
According to the Company, the “Board misconstrues this action as an ... ‘appeal’ on the merits [of the final assessment] by asserting that [the Company] is ‘dissatisfied’ that taxes have been assessed by the [Board] in its final assessment.” The Company’s brief, at 18. On the contrary, the Company argues, it “is not ‘dissatisfied’ in that taxes might possibly be owed to Tuscaloosa County. In fact, the position taken by [the Company] in its complaint (that [it] was due a refund ... because Tuscaloosa County was the correct county to receive the contested ... tax) is entirely consistent with the final assessment.” Id. (emphasis added). The Company’s position, therefore, is simply that the Local Act does not apply to this case as it is procedurally postured. We agree.
Assuming, without deciding, that an appeal to the Tuscaloosa Circuit Court, pursuant to § 10 of the Local Act, is the exclusive vehicle for challenging the merits of a final assessment of the Board, this is not such a case. As clearly expressed in § 10, that section deals with “appeal[s] from ... final assessments].” The dispute in this case, however, does not center on the amount of the tax owed by the taxpayer or, indeed, on whether the tax is owed; instead, it centers on who is the proper recipient of the tax proceeds. As the complaint correctly avers, this is essentially a dispute between two counties over the same tax proceeds. Such disputes are not the subject of the Local Act, but are, more properly, the concern of the statutes of statewide application.
In short, the Board has failed to demonstrate a “clear and certain” right to a writ of mandamus directing the Fayette Circuit Court to dismiss the claims against it. Resolution of this action will necessarily involve a judgment determining and declaring the proper recipient of the tax proceeds. Moreover, the request for in-junctive relief essentially tracks the language of the “anti-whipsaw” statute, which prohibits the alleged “proper locality” from “assessing] or attempting] to assess the tax, or any related interest or ... penalty ... until the date of receipt of the overpayment by the taxpayer or the taxpayer’s agent.”[2] For these reasons, the petition is denied.
PETITION DENIED.
*614 COBB, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.

. To be sure, the TBOR defines "the department” as the "Alabama Department of Revenue.” § 40-2A-3(7). However, the Board concedes that the TBOR is applicable — and available — as a vehicle "to dispute Fayette County’s refund denial.” Reply brief, at 15. Thus, for purposes of this mandamus proceed-zng, we will assume that the TBOR affords a mechanism through which to challenge Fay-ette County's refusal to refund use taxes alleged to have been erroneously paid. See also the Local Tax Simplification Act of 1998, Act No. 98-192, § 3(b), Ala. Acts 1998 (counties "electing] to administer and collect, or *613 contract for the collection of, any local sales and use taxes ..., shall have the same rights, remedies, power and authority, including the right to adopt and implement the same procedures, as would be available to the Department of Revenue if the tax or taxes were being administered, enforced, and collected by the Department of Revenue”).

. There is' no contention that the Company has failed timely to “compl[y] with the refund procedure” set forth in the TBOR or in § 40-23-2.1. Nor is any issue presented regarding whether Fayette County is the proper venue for this action. The sole issue relates to the power of the Fayette Circuit Court to adjudicate this action. See Ex parte City of Huntsville Hosp. Bd., 366 So.2d 684, 686 (Ala. 1978) (distinguishing venue from jurisdiction).